Carran *vs.* Aymes.

No. 7164.

JOHN CARRAN VS. J. O. AYMES. WIDOW TABARY, THIRD OPPONENT.

A perfect delegation is when the creditor accepts a new debtor in the place and stead of the original debtor, but in the imperfect delegation the new debtor does not supersede the original, but becomes co-debtor with him.

An example of the imperfect or non-perfect delegation is, where one has already a mortgage, and the mortgagor sells the mortgaged property, and the buyer assumes payment of the mortgage as part of the price, the buyer becomes a co-debtor of the mortgage debt.

So in the same case, this mortgagor in selling has the vendor's lien which enures to the benefit of the mortgagee, and this acquisition of an additional security does not novate the debt.

APPEAL from the Fifth District Court of New Orleans. ROGERS, J.

*Robert* for Plaintiff. *Louque* for Third Opponent Appellant.

This case is a pendant to Succession of Tabary, 31 La. Ann. 409.

Carran held a note of Tabary, deceased, secured by mortgage upon a lot of ground. Tabary had sold the ground to Aymes, who assumed payment of the mortgage note as part of the purchase price. It formed, indeed, four-fifths of it. Carran took this executory process to foreclose his mortgage, and the widow Tabary injoined on the grounds: (1) that the sale from her husband to Aymes, who was his son-in-law, was a simulation, and that Carran

procured it to be made for the purpose of depriving her of the portion, claimable by her as a widow in necessitous circumstances; (2) that Aymes, before Carran obtained the order of seizure and sale, had recorded his own acknowledgment of the simulation, and thereupon the Probate Court had ordered the sale of the lot as succession property, and she had bought it at that sale; (3) that if that sale is null, the lot belongs to the succession, and the Fifth Court was without jurisdiction to issue the order of seizure and sale; (4) that the present attempt to foreclose the mortgage is barred by two judgments; (1) the District Court's homologation of her account as administratrix, in which she pretended to distribute the proceeds of sale of this lot, swallowing the major part herself and conceding to Carran only $131 (see Suc. Tabary, 31 La. Ann. 410); (2) the judgment of this court reinstating the order to sell that she had provoked. See Suc. Tabary, 30 La. Ann. 188.

By what is called in the opinion "homestead right" is meant, not the right to a *homestead*, but the right to that portion of a man's succession given his widow and minor children if left in necessitous circumstances, and which is fixed at one thousand dollars in money.

After stating the case,

DE BLANC, J. The allegations of Mrs. Tabary's petition for an injunction are not consistent; on one page she denounces, as a simulation, an act, the consideration of which is mostly, the payment of the note sued upon by Carran, and on the very next page, she avers that, as administratrix of the succession of Tabary, she is the debtor of said note, which she charges was satisfied by the proposed allowance to Carran of an insignificant fraction of the price of the adjudication to her.

As to Aymes, in what is called the counter-letter, he said: "That the sale was made for the purpose of facilitating Tabary in obtaining a loan of money." How reconcile that part of the counter-letter, recorded after the death of Tabary and which does not bear his signature, with the recitals in the act of sale, that it was made for fifteen hundred dollars, three hundred of which the purchaser paid cash and in legal currency, and for the balance assumed to pay the note held by Carran. It is difficult to realize that such an act could have facilitated Tabary in obtaining a loan.

Aymes appeared in court, in proper person, and in his answer to Mrs. Tabary's injunction, alleges that the object of the sale from the deceased to him, was to deprive Mrs. Tabary of her homestead rights; that had he been aware that she could be injured by said sale, he would have refused to sign it, and did so to please Tabary, who was his father-in-law. We are not informed when and how he became aware of the object of that sale, nor is it shewn that Tabary's succession is insolvent, or that collectively, or separately, the widow and children do not own one thousand dollars. 25 A. 535; 13 A. 398; 15 A. 527.

In the opinion and decree read this day in another branch of this extensive controversy we have passed upon and decided adversely to Mrs. Tabary, the second ground on which she relies to perpetuate her injunction.

We also held that, as concerned Carran, the title to the mortgaged property is still in Aymes, and under our decision, the Fifth District Court had jurisdiction of Carran's application for a writ of seizure and sale.

Of the two decrees on which Mrs. Tabary has based her plea of *res judicata*, one, that of the District Court has been reversed by us, and the other, our own, divested of the *obiter dicta* suggested by an error of fact, merely reinstated an order of sale, the execution of which had not been injoined, and could have been properly opposed, we said, but by an injunction accompanied by affidavit and bond; but in the opinion which precedes that decree, it was twice asserted that, if Carran's allegations were true, and that they are true cannot now be doubted, no sale of the property on the succession could affect his right to have it sold under his mortgage and as the property of Aymes.

Carran, we are told, did not lend his money on the faith of the act from Tabary to Aymes, and in the pre-extension which he granted for the payment of his note, to Tabary before, to Aymes after the sale, he expressly stipulated that said payment was extended without novation. This is true, and it seems probable, as contended by the widow, that the sale from Tabary to Aymes was passed for the purpose of adding to Carran's conventional mortgage a vendor's privilege, and thus avoid the ulterior enforcement of any rights which, otherwise, she might be entitled to and exercise at her hus-

band's death; but it cannot be disputed that a creditor may, without committing a fraud, require or accept an additional security, and more particularly when, in return for that security, he postpones the enforcement of an already matured obligation and of his hypothecary action.

At the date of the act attacked as a simulation Tabary was living, the homestead claim now urged by the widow had not accrued, and Carran could have foreclosed his mortgage before the happening of the casualty which gave rise to that claim. In accepting the additional security, he merely preserved and continued, as to the hypothecated property, a preference which he had at the date of the sale from Tabary to Aymes, and these parties, stipulation in favour of Carran, constitutes according to Mourlon, what he styles the imperfect delegation "qui ne contient pas de novation. Elle a lieu lorsque le créancier, qui accepte le nouveau débiteur, qui lui est présenté par son débiteur, ne décharge point ce dernier. Dans la délégation parfaite, le créancier reçoit un nouveau débiteur au lien et place de l'ancien. Dans la délégation imparfaite, le nouveau débiteur ne prend pas la place de l'ancien il devient son co-obligé. Mourlon, Examen du C. N., p. 745, No. 1420.

Mrs. Tabary's counsel contends that, when Carran proceeded against Aymes, the latter's declaration, "that the sale was a simulation," had already been recorded, and the title to the property already returned to the succession of Tabary, and that it was too late to proceed under the act which Aymes had canceled by his declaration. This is not our opinion. The stipulation in favour of Carran was agreed to by both Tabary and Aymes, in the interest of the former and of his family, to save his property from an impending seizure, from an immediate sale. What followed? An extension of time was granted by Tabary's creditor for the payment which Aymes, as Tabary's vendee, had obligated himself to make for his vendor; and that extension, the last of the five, was granted to Aymes; that is shewn by a written statement which bears his signature, and that specified extension was, on the part of the creditor of the vendor and vendee, an acceptance of the stipulation in his favour contained in the act of sale. From the date of that acceptance Tabary and Aymes together could not have annulled, by mutual consent, the obligation thus contracted by them, and much less could it

have been annulled after Tabary's death, and by a mere declaration of his vendee.

Quoique non encore acceptée par le tiens, l' offre n'est pas révocable pour l'un des contractants quand elle est faite par l'une et l'autre partis, et le tiens auquel l'offre est faite peut accepter pas acte sous seing privé aussi bien que par acte authentique, tacitement on expressiment. Cette acceptation n'est asseyettie à aucun formalitè particulière. Mourlon, Examen du C. N., Vol. 2, p. 562.

*Judgment affirmed.*